## MOST WORSHIPFUL GRAND LODGE OF FREE AND ACCEPTED MASONS OF TEXAS v. FENNER.    (No. 7712.)

Court of Civil Appeals of Texas. San Antonio.
Feb. 23, 1927.

Rehearing Denied April 13, 1927.

Insurance ☞819(1)—Trial court's finding that deceased member's widow was entitled to insurance fund held supported by evidence.

Trial court's finding that widow of deceased member of fraternal benefit society was entitled to insurance fund, payable first to wife of a member if she has not separated herself from him, or is not living a life of prostitution, *held* supported by evidence.

Appeal from Bexar County Court for Civil Cases; McCollum Burnett, Judge.

Action by Mrs. Josephine Fenner against the Most Worshipful Grand Lodge of Free

and Accepted Masons of Texas. From a judgment for plaintiff, defendant appeals. Affirmed.

Hertzberg, Kercheville & Thomson and Marion R. McClanahan, all of San Antonio, for appellant.

Oliver W. Johnson, of San Antonio, for appellee.

COBBS, J. It is rather difficult for us to make a brief statement of the nature and result of this case from the lengthy pleadings.

Appellee, as the surviving wife of Claud Fenner, deceased, brought this suit against appellant, the Most Worshipful Grand Lodge of Free and Accepted Masons of Texas, a fraternal benefit society, incorporated, having its domicile in Fort Worth and its membership consisting of colored people, to recover certain sums alleged to be due appellee, growing out of the membership of Claud Fenner, deceased; and it was alleged, among other things:

"That plaintiff is the surviving wife of one Claud Fenner, deceased, who died at New Braunfels, Tex., on or about the 13th day of November, 1924.

"That at the time of the death of the said Claud Fenner, and long prior thereto, he was a member of defendant society, having been admitted and initiated in said society in the Abraham Lincoln Lodge, at New Braunfels, Tex., a subordinate lodge to defendant, Grand Lodge. And for and in consideration of the payment by the said Claud Fenner to defendant, and for the further payment by the said Claud Fenner to defendant, Grand Lodge, and subordinate lodge of certain taxes, dues, and assessments, through his natural life, defendant, Grand Lodge, promised to insure and did then and there insure the life of the said Claud Fenner upon the following conditions and manner; viz., by the payment of certain dues, taxes, and assessments to said subordinate lodge for its upkeep and maintenance; by the payment of the sum of $1 each year to defendant, Grand Lodge, as Grand Lodge tax; by the payment to defendant, Grand Lodge, each year the sum of $10 as relief to be equally divided among the surviving widows, orphans, and nearest relatives of all the Master Masons that may have died during such Masonic year; defendant agreed that if the said Claud Fenner would deport himself as a Mason during the remainder of his natural life, his actions to be prescribed by defendant society, then and in that event, defendant, Grand Lodge, would insure his life for such amounts that may be equally divided between the widows, orphans, or nearest relatives of Master Masons that may have died during the Masonic year that he may die.

"That the said Claud Fenner at the time of his death, as aforesaid, had paid all dues, taxes, and assessments due and owing from himself to defendant society and had in all respects complied with all the rules of said society.

"Plaintiff says that each widow, or the orphans and nearest relatives of the Master Masons, who died during the Masonic year in which the said Claud Fenner died, received the sum of $610 as relief benefits derived from the death of such Master Masons."

The case was tried by the court without a jury. No findings of fact nor conclusions of law were requested to be found by the court by either party, but it is recited in the judgment of the court:

"And the court, having heard the pleadings read, the evidence adduced in support of the same, and the arguments of counsel, is of opinion that the law and facts are with the plaintiff, Mrs. Josephine Fenner, and that she has established by full and satisfactory evidence that she is entitled to recover of and from defendant the sum of $410.

"It appearing to the court that plaintiff's suit is for $610, $200 of which sum to be used to pay the funeral expenses of the deceased husband of plaintiff, and that said sum of $200 has heretofore been paid by defendant and has been applied to the funeral expenses of the deceased husband of plaintiff:

"It is accordingly ordered, adjudged, and decreed by the court that plaintiff, Mrs. Josephine Fenner, do have and recover of and from defendant, the Most Worshipful Grand Lodge of Free and Accepted Masons of Texas, the sum of $410, together with interest thereon from date of June 19, 1925, until paid, at rate of 6 per cent. per annum."

As this is largely a fact case and no difficult questions of law are presented, we shall leave the case as decided by the trial court. While there is testimony, pro and con, in respect to the right of the appellee, as the wife of deceased, to receive the benefits, there are sufficient facts upon the issue to support the judgment of the trial court. There are no errors assigned that should cause a reversal. We think the case has been fairly tried and substantial justice administered. The judgment is affirmed.

On Motion for Rehearing.

Vigorous complaint is made that we did not discuss seriatim et ad literatim each question argued and presented in counsel's brief. We thoroughly examined, then, as we have now done, all the points raised and presented, and now again have gone over the statement of facts.

Payments were required to be made:

"First, to the wife of a Master Mason, if she is living; second, to the legal child or children, if living; third, to his mother if living; fourth, to his unmarried sister, if living; and, fifth, to his father, if living; sixth, the married sister or brother, provided she or he take care of him in his last hours of illness."

The constitution of the lodge further provided:

"Sec. 2. The Grand Lodge shall not extend relief or aid to the wife of a Master Mason who has deserted, quit, separated, or divorced herself from him before his death.

"Sec. 5. Master Masons' wives, who separate, quit, and live lives of prostitution, shall

not be granted or extended relief from the Grand Lodge relief fund."

The defense of the lodge seems largely predicated upon the theory that it selected five of its members to examine into and report the name of the beneficiary, and, upon that report being made, it was such a finding of fact and such an adjudication as when acted upon protected the order from the claim of appellee, because pleading protection under:

"Section 10 of the constitution of the Most Worshipful Grand Lodge of Free and Accepted Masons of the State of Texas, as adopted on July 17, 1924, provides that 'When a Master in good financial standing dies, he having paid in full $10 his relief and Grand Lodge dues to the Grand Lodge, it shall be the duty of the secretary of his lodge to file in the office of the Grand Secretary a sworn statement, signed by five Master Masons, giving the date of death and setting forth when the brother joined the lodge, who his beneficiaries are under the laws of the Grand Lodge; where he died, and whether he was given a decent Masonic burial by the beneficiary, and what lodge performed the Masonic ceremonies. If the beneficiary gave the dead Master Mason a decent Masonic burial, it shall be the duty of the Grand Secretary, immediately after receiving the said statement signed by the five Master Masons, to draw a check payable to the order of the beneficiary for $200 and send it to the secretary of his lodge who shall turn it over to the beneficiary, who shall pay all funeral expenses out of the $200, and the Grand Lodge nor local lodge of Free and Accepted Masons shall ever be held responsible to pay the funeral expenses of a Master Mason. The $200 immediate relief so paid by the Grand Lodge shall be deducted from the total sum of relief funds collected each year, and which shall be prorated on the last day's session of the Grand Lodge in June of each and every year, and the balance, if any, paid to the beneficiary; which shall be known as the second payment of relief.'"

The witness, testifying further, stated that the affidavit was made out and sent in after the death of Claud Fenner, relative to his death.

"I sent that affidavit in myself, but I have not the original of it at this time."

Contending the affidavit complied with section 10 of article 6 of the constitution, which was just read, in which:

"It states in here that it shall be the duty of the Secretary of the home lodge to file in the office of the Grand Secretary a sworn statement, signed by five Master Masons, giving the date of death and setting forth when the brother joined the lodge, who his beneficiaries are under the laws of the Grand Lodge; that was stated in that affidavit. The name put in there was 'Sylvia Fenner.' She is the mother of Claud Fenner. The reason for putting her name in that affidavit as beneficiary was because she swore to me she cared for him in his illness. You have asked me why I did not put his wife's name in there, and I will say her name was down there, on the bottom line, with the recommendation that the money be paid to the one who cared for him, who was Sylvia Fenner, his mother, and not Josephine Fenner, his wife.

"I saw Claud Fenner and his wife together some six or seven months before the death of Claud Fenner. I saw them together on the 19th of June; she was riding in a car with him. That was the only time.

"I did not see Claud very often during that time. I do not know whether or not they were living together as husband and wife in that time.

"As to whether or not Josephine was ever separated from Claud Fenner, she lived over here in San Antonio, but I do not know whether they were separated or not. As to whether she was living under the same roof with him at the time of his death, in the same house with him, she did not come there until he went to the hospital. He was in the hospital when he died. He was taken to the hospital at the time of his last illness. You have asked me if I know whether they were living together as man and wife at the time of his death, and I will say she was living down at his mother's with him, but whether they were living together at the time of his death, at the time he was taken to the hospital, she did not come to the hospital until he was taken over there on a Sunday morning, but I do not know whether she was living with him there or not."

We have thus quoted largely from the testimony and presumed authority under which the appellant attempts to justify itself in making the payment to the mother. The report of the five members was not attacked for fraud, misconduct, or arbitrary action in making the designation, but the report on its face and the testimony itself in connection therewith showed want of care and extreme carelessness in securing the facts necessary to act on. We cannot see upon what theory they found his wife not to be the beneficiary, for she was expressly made so by the terms and provisions of appellant's constitution and by-laws. It is a charitable institution and extends its charity or relief to worthy persons and its members, in accord with its own fixed laws and rules. When the witness put in the report naming Sylvia Fenner as beneficiary instead of Josephine Fenner, that was in direct contradiction of the terms of the contract well known to the order. On its face it showed it was made upon an ex parte investigation carelessly or arbitrarily so, without full investigation, stating:

"The reason for putting her name in that affidavit as beneficiary was because she (the mother) swore to me she cared for him in his illness."

The testimony was conflicting. The trial court, no doubt, found that the wife was merely temporarily absent from him, not permanently; that she did return to him promptly, on notice, in his last illness, though afterwards driven away by her husband's mother.

The report of the five members does not amount to a conclusive finding of fact; indeed, it undertakes no finding of any fact provided for that would defeat appellee's rights. The court has found the facts in her favor, and we do not feel disposed to disturb his ruling.

The motion is overruled.